**Gordon E. MILLIS, Jr. and Bonita Millis, Appellants,**

v.

**Theresa D. HUTE, Appellee.**

**No. 97–730.**

Court of Appeals of Iowa.

Oct. 29, 1998.

Edward J. Cervantes of William J. Bribriesco & Associates, Bettendorf, for appellants.

James D. Hoffman of James D. Hoffman, P.C., Davenport, for appellee.

Heard by CADY, C.J., and STREIT and VOGEL, JJ., but decided by SACKETT, P.J., and STREIT and VOGEL, JJ.

VOGEL, J.

Gordon and Bonita Millis appeal a district court judgment, following a jury trial, which rejected their action for damages against Theresa Hute. We find no error by the district court in admitting a defense expert's opinion on causation nor in denying the motion for a new trial. We affirm.

***Background facts.*** On July 3, 1993, Gordon Millis was involved in an automobile collision with Theresa Hute at an intersection in Davenport, Iowa. Gordon and his wife, Bonita, filed an action against Hute to recover for his personal injuries and her loss of consortium. Hute stipulated that she was negligent in the operation of her vehicle; the parties further stipulated to the amount of damage sustained to the vehicles. The fighting issue at trial was whether the accident proximately caused Gordon's claimed injuries, which included lower back problems.

Trial was held in January of 1997. After deliberating, the jury found that the negligence of Hute was not a proximate cause of damage to Gordon Millis. The Millises' motion for new trial and bill of exceptions were denied by the court. The Millises appeal.

***I. Expert opinion on causation.*** The Millises assert that the trial court erred in admitting a defense expert's opinion on the issue of causation.

■ As in all evidentiary matters, the trial court has broad discretion in making rulings on expert testimony under Iowa Rule of Civil Procedure 125. *Milks v. Iowa Oto-Head & Neck Specialists, P.C.*, 519 N.W.2d 801, 805 (Iowa 1994); *Beeman v. Manville Corp. Asbestos Disease Compensation Fund*, 496 N.W.2d 247, 253 (Iowa 1993). We will disturb its rulings on such matters only upon a finding of abuse of that discretion. *Milks*, 519 N.W.2d at 805; *Beeman*, 496 N.W.2d at 253–54. An abuse of discretion is shown only where such discretion was exercised by the court on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 543 (Iowa 1996).

■ Prior to trial, Hute retained Dr. Michael Cullen, a neurologist, for the purpose of conducting a medical examination of Gordon Millis. Dr. Cullen conducted the examination in July of 1996 and shortly thereafter, in response to a discovery request, submitted a report which provided in relevant part:

Impression: The patient has persistent low back pain dating to a motor vehicle accident some three years ago.... He has degenerative changes of the lumbar spine by plain spine x-rays taken approximately eighteen months after the incident with evidence of a small disc herniation at the L5–S1 level again by radiographic studies eighteen months after the incident. It is the opinion of this evaluator that Mr. Millis suffers from a degenerative lumbar condition contributed to or accelerated by his motor vehicle trauma of July of 1993. His treatment should remain conservative in nature and would typically involve intermittent medicinal intervention complemented by exercise to emphasize aerobic,

flexibility and strengthening. He is not a surgical candidate at this time.

Dr. Cullen's video-taped deposition was taken on August 2, 1996, with the anticipation that it would be used at trial in lieu of Dr. Cullen's attendance at trial. At the deposition, Dr. Cullen testified that Millis's back problem was caused by multiple factors, including: degenerative causes or wear and tear; body habitus or weight; and the injury from the accident. The Millises objected, arguing that Dr. Cullen's testimony was beyond the scope of his report. Dr. Cullen was then asked if he was able to attribute percentages to these factors relative to causation. Dr. Cullen said he could offer something between a guess and an estimate. Again the Millises objected, arguing that a guess or estimate does not meet the required standard of reasonable degree of medical certainty.

Shortly before trial in January 1997, the trial court denied a motion in limine filed by the Millises which reasserted their objections to Dr. Cullen's testimony. Dr. Cullen's deposition was subsequently read into the record at trial in its entirety.

Iowa Rule of Civil Procedure 125(d) provides, in part:

> To the extent that the facts known, or mental impressions and opinions held, by an expert have been developed in discovery proceedings under subdivisions (a)(1) or (2) of this rule, the expert's direct testimony at trial may not be inconsistent with or go beyond the fair scope of the expert's testimony in the discovery proceedings as set forth in the expert's deposition, answer to interrogatories, separate report, or supplement thereto.

The Millises assert that Dr. Cullen's evidentiary deposition testimony went beyond the fair scope of the opinions expressed in his written report to their surprise and prejudice. However, we agree with the trial court's determination that the testimony did not go beyond the fair scope of the written report. The report stated the accident contributed to or accelerated his condition. His deposition included that Millis's back problems were caused by multiple factors, includ-

ing the accident. The report and deposition are not inconsistent.

■ Furthermore, the purpose of Iowa Rule of Civil Procedure 125 is to avoid surprise to litigants and to allow the parties to formulate their positions on such evidence as is available. *See Lambert v. Sisters of Mercy Health Corp.,* 369 N.W.2d 417, 422 (Iowa 1985); *Mills v. Iowa Dept. of Transp.,* 462 N.W.2d 300, 303 (Iowa App.1990). We recognize that it is common practice for a deposition to be read into evidence in lieu of producing the witness at trial. As a practical matter, portions of the trial record are developed before the actual trial. Therefore, it is appropriate that we look to Iowa Rule of Civil Procedure 125 to apply to these situations. Nonetheless, when there is a considerable time period between the evidentiary deposition and the trial date, the parties can continue their trial preparations, knowing full well the content of the evidentiary deposition. In this case, while the Millises claim to be surprised by Dr. Cullen's evidentiary deposition testimony, there remained more than four months until the actual trial date. The Millises had sufficient opportunity to seek further testimony on the disputed issues from their own experts but chose not do so. Moreover, we do not believe the Millises suffered prejudice from the admission because they had several experts of their own to counter Dr. Cullen's testimony and because Dr. Cullen's testimony supported, in part, their theory of causation.

■ The Millises further argue that Dr. Cullen's testimony should not have been admitted because he essentially offered a guess as to the cause of the accident. An expert may not express a mere guess or conjecture, but he may testify to what might have been the cause of a certain result. *See Cody v. Toller Drug Co.,* 232 Iowa 475, 481, 5 N.W.2d 824, 827 (1942). In addition, an expert may express his or her opinion as to possibility, probability or actuality of causation. *See Becker v. D. & E. Distrib. Co.,* 247 N.W.2d 727, 730 (Iowa 1976); *State v. Stribley,* 532 N.W.2d 170, 172 (Iowa App.1995). Here, Dr. Cullen did not offer a guess as to causation per se; he offered an estimate as to the percentages of causation attributable to each

factor he identified. We find no error by the trial court in admitting the testimony.

**II. Motion for new trial.** The Millises argue that the trial court erred in denying their motion for a new trial because the jury's decision was not supported by the evidence.

■■■ Our scope of review is for the correction of errors at law. Iowa R.App. P. 4. In ruling upon motions for new trial, the trial court has broad but not unlimited discretion. Iowa R.App. P. 14(f)(3). Consequently, we will reverse only upon a finding of an abuse of that discretion. *Carolan v. Hill,* 553 N.W.2d 882, 885 (Iowa 1996).

■■■ The Millises contend that a reasonable jury could not fail to find causation since Hute stipulated to her negligence. However, it does not necessarily follow that stipulating to negligence equates to stipulating to causation. *See Johnson v. Knoxville Community Sch. Dist.,* 570 N.W.2d 633, 642 (Iowa 1997) (although defendant stipulated to negligence, plaintiffs were still required to prove proximate cause on all issues of damages). Here, the jury was presented with considerable evidence refuting that the accident was the proximate cause of any damages claimed by Gordon Millis. Millis delayed seeking treatment after the accident and gave inconsistent medical histories to the various doctors and chiropractors he saw over the several years following the accident. Millis also admitted that he did not take any pain medication in the months following the accident, did not take all of the pain medications he was ultimately prescribed, and did not refill any of his prescriptions. The defense also pointed out the glaring absence at trial of Millis's personal physician, from whom he received treatment before and after the accident. Furthermore, although Millis claimed lost earning capacity, the jury heard how his business income actually increased after the accident. We find sufficient evidence in the record to support the jury's verdict and no abuse of discretion by the trial court in denying the Millises' motion for new trial.

**III. Conduct of trial court.** Finally, the Millises contend that the trial court's actions during trial injected prejudice into the proceedings and influenced the jury, resulting in an unfair trial. Hute argues that error was not preserved on this issue because the trial court refused to sign the Millises' bill of exceptions. However, we find error was adequately preserved by the court's reference to the bill of exceptions in its ruling on the motion for new trial and by the record made in the hearing on the motion for new trial.

■■■ Sometime prior to closing arguments, the trial judge asked the Millises' counsel during a recess if he intended to offer any more exhibits. The Millises' counsel said he did not, and the trial judge asked him if he intended to introduce the mortality tables to assist the jury in its determination of any future damages. After the recess, the Millises' counsel offered the mortality tables as Exhibit 38, but indicated that he could not find his copy, and proposed that the tables be marked and submitted later. The court agreed and received the exhibit.

Instructions were then argued before the court, read to the jury, and the parties proceeded to make their closing arguments. The court then read the final four instructions to the jury and asked them to stand to be sworn. At that time, the court attendant advised the court that she could not find Exhibit 38. The Millises' counsel said that he could not find his 8½ × 11 copy of the mortality tables, and asked the court if he could introduce the enlarged copy he had used in closing arguments. The court noted that counsel had written on the enlargement during the closing and said it could not be admitted as an exhibit. The court then firmly told the Millises' counsel to immediately take the appropriate volume of the Iowa Code and make a copy while the jury waited.

While the Millises' counsel was out of the courtroom, the judge dropped his pen on his desk and sat back in his chair. The Millises characterize the judge's actions as "yelling" at their counsel, "throwing" his pen on the bench, and crossing his arms "in disgust." After the jury was dismissed to deliberate, the judge invited both attorneys into chambers and apologized to the Millises' counsel for being irritated with him for failing to have Exhibit 38 ready to be submitted.

■ The Millises presented the trial judge a proposed bill of exceptions regarding the perceived prejudicial conduct of the court, attested to by themselves, which he refused to sign. The Millises subsequently filed their bill of exceptions and Hute filed an objection and motion to strike the bill. After a hearing, the trial judge struck the bill of exceptions because it was not in compliance with the "bystander attestation" requirement of Iowa Rule of Civil Procedure 241. That rule provides, in relevant part:

(c) Certification; Judge; Bystanders. The proposed bill of exceptions shall be promptly presented to the trial judge, who shall sign it if it fairly presents the facts. If he refuses, and counsel so certifies, and at least two bystanders attest in writing that the exceptions are correctly stated, the bill thus certified and attested shall be filed and become part of the record.

Our supreme court has held that parties to a lawsuit are not considered bystanders under the rule. *See Music v. DeLong,* 209 Iowa 1068, 1073–74, 229 N.W. 673, 676–77 (1930). The Millises ask the court to reconsider that position under the circumstances of this case. While we understand that this was a case where two "bystanders" were unlikely to be present, we are not inclined to make an exception. We recognize that this may from time to time present a problem, but we will not enlarge the rule beyond its plain reading. We find no abuse of discretion by the trial court in striking the bill of exceptions and denying a new trial. Moreover, we do not believe the court's alleged momentary loss of composure prevented the Millises from having a fair trial.

Having considered all issues properly before us on appeal, we affirm the verdict and judgment for Hute.

**AFFIRMED.**